UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

MARTHA I. PEREZ,                    )  No. CV 12-10369-VBK
                                    )
                  Plaintiff,        )  MEMORANDUM OPINION
                                    )  AND ORDER
       v.                           )
                                    )  (Social Security Case)
CAROLYN W. COLVIN, Acting           )
Commissioner of Social              )
Security,                           )
                                    )
                  Defendant.        )
_____)

     This matter is before the Court for review of the decision by the

Commissioner of Social Security denying Plaintiff's application for

disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have

consented that the case may be handled by the Magistrate Judge. The

action arises under 42 U.S.C. §405(g), which authorizes the Court to

enter judgment upon the pleadings and transcript of the Administrative

Record ("AR") before the Commissioner. The parties have filed the

Joint Stipulation ("JS"), and the Commissioner has filed the certified

AR.

     Plaintiff raises the following issues:

     1.   Whether  the  Administrative  Law  Judge  ("ALJ")  erred  in

1     discounting the medical opinions of treating physicians

2     Pappas, Gutierrez, Fuenzalida, and Barba; and

3  2. Whether the ALJ erred in finding that Plaintiff's subjective

4     complaints are not credible.

5 (JS at 6.)

6

7   This Memorandum Opinion will constitute the Court's findings of

8 fact and conclusions of law. After reviewing the matter, the Court

9 concludes that for the reasons set forth, the decision of the

10 Commissioner must be reversed and the matter remanded.

11

12           **I**

13    **SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE ALJ'S**

14  **DETERMINATION OF PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY**

15   On May 15, 2009, Plaintiff filed applications for disability

16 insurance benefits and Supplemental Security Income, alleging an onset

17 date of June 4, 2008.  After administrative denials, Plaintiff was

18 granted a hearing before an ALJ (AR 45-80), at which Plaintiff

19 testified through an interpreter, and testimony was taken from a

20 vocational expert ("VE"), and a lay witness.  Thereafter, on May 13,

21 2011, the ALJ rendered a written Decision (AR 23-31), and there

22 reached a determination that Plaintiff has not been under a disability

23 from the alleged onset date to the date of the Decision. (AR 31.)  For

24 reasons to be set forth, the Court finds that this determination is

25 not supported by substantial evidence, and will be reversed and

26 remanded for a new hearing.

27   Plaintiff's previous work was as a banquet server in a hotel and

28 then as an in-home caregiver until 2007. (AR 53.)  She suffered a

stroke on June 3, 2008 (AR 50-54.)  At that time, she indicated to her medical professionals that she experienced dizziness and poor balance and had fallen because of that several times. (AR 54-55.)  She has incontinence problems and indicates she has been diagnosed with chronic hematuria and an overactive bladder. (AR 63-67.)  She also complains of severe lower back pain which radiates to the bottom of her foot. (AR 54.)  She has been treated by her neurologist for depression. (AR 63.)  She has been prescribed medications to combat her dizziness and vertigo, back pain, blood pressure, depression, and for prevention of strokes, and has had a lack of long term success from medications intended to address her urinary problems. (AR 5-58, 63, 66.)

Following her stroke, Plaintiff was examined and treated by family practitioner Dr. Pappas in July 2008, at which point she had improved somewhat but still experienced dizziness, vertigo, balance problems, gait ataxia, and persistent headaches. (AR 282.)  These symptoms were again reported to her doctors in January 2009 (AR 261), May 2009 (AR 258), and at other times.

In 2010, Plaintiff was treated by family practitioner Dr. Gutierrez and at that time had a mild facial droop. (AR 383.)  Both Dr. Pappas and a neurologist, Dr. Fuenzalida, indicated that Plaintiff required use of an assistive device for walking (AR 282), and Dr. Fuenzalida, on January 28, 2011, indicated that he has been following Plaintiff since her stroke, and that he had changed her blood pressure medication from Coumadin to Aggrenox, later changed to generics. (AR

484.)[1]    Dr. Fuenzalida assessed that Plaintiff can sit for eight hours in an eight-hour day, and can stand or walk only one hour. (AR 537.) He also noted that Plaintiff is depressed following her stroke. (AR 538.)   Dr. Fuenzalida also limited Plaintiff to lifting or carrying up to ten pounds occasionally.   These conclusions were reiterated by Dr. Fuenzalida in a letter dated June 24, 2011 in which he also concluded that Plaintiff's impairments would result in her being absent from work more than three days per month. (AR 548.)  As will be noted, this is a significant conclusion, in that at the hearing, when this absence from work factor was incorporated into a hypothetical question, the VE concluded that this would "preclude competitive employment." (AR 75-76.)  The ALJ determined that Dr. Fuenzalida's opinion was "speculative," but the Court rejects that as a non-analytic conclusion, as will be more fully discussed.

With regard to Plaintiff's incontinence issues, she was referred by Dr. Gutierrez to a urologist, Dr. Martinez, who examined Plaintiff and wrote a letter to Dr. Gutierrez on March 26, 2010. (AR 514.)  In

---

[1]    The Commissioner makes much of the fact that about five months after Plaintiff's stroke, Dr. Pappas said that she would remain on Coumadin for the rest of her life. (AR 232.)  The Commissioner makes no comment on the fact that the neurologist, Dr. Fuenzalida, discontinued Coumadin, but changed the applicable drug to Aggrenox.
    Although Dr. Pappas indicated that doctors were "working to control her blood pressure and hope gradually her neurological symptoms will abate" (AR 232), Dr. Fuenzalida completed a "Stroke Impairment Questionnaire" (AR 534-539) in March 2011 stating, in part, that "[Plaintiff] has a residual gait ataxia from the stroke [sic] she needs a cane to help her gait [sic] this is fixed neurological deficit.  No further recovery is predicted." (AR 534.)  As the Court will discuss, much of the underpinning for the ALJ's determination of nondisability is based on his lay conclusion that Plaintiff's ambulation problems stem from high blood pressure.  The ALJ failed to comment on or evaluate Dr. Fuenzalida's apparent conclusion that Plaintiff's problems had a neurological cause.

that letter, Dr. Martinez indicated a treatment plan, and on May 7, 2010, followed up with another letter indicating that progress had been made, and that Plaintiff "now suffers no urgency incontinence whatsoever." (AR 449.)

At the hearing, Plaintiff indicated that her urinary symptoms had returned and that they had failed to respond to three different medications, but she had not been able to follow up with Dr. Martinez. (AR 66.)  In October 2010, Dr. Gutierrez attested that Plaintiff again complained of some urinary incontinence (AR 354-357), and urologist Dr. Barba completed a "Bladder Problem Impairment Questionnaire" in March 2011 (AR 541-545), which diagnosed "chronic hematuria and overactive bladder with urgency urinary incontinence." Dr. Barba's prognosis for Plaintiff was "poor." (AR 541.)  It appears that at this time Plaintiff was beginning a course of treatment involving tibial nerve stimulation (see AR 542-543), but the effectiveness of that new therapy was undetermined at the time of the hearing in this matter. Plaintiff described her urinary frequency to Dr. Barba as 18-20 times per 24 hours and 10 times during an eight-hour workday. (AR 543.)

The ALJ determined Plaintiff's RFC as enabling her to perform light work which requires an ability to exert up to 20 pounds of force occasionally and up to 10 pounds of force frequently.  He also assessed that Plaintiff can stand and walk up to six hours and sit up to six hours in an eight-hour workday with normal breaks, provided that her standing and walking does not exceed one hour at a time after which she must be allowed to sit at least five minutes before resuming standing and walking.  Additional limitations not relevant to the issues in this case were assessed; however, the ALJ indicated that she would require a rest room not remote from her work station to

accommodate her need to periodically urinate. (AR 26.)

The medical sources which are identified in the Decision include discussion of Dr. Pappas' opinion; Dr. Gutierrez'; Dr. Fuenzalida's; and Dr. Barba's (erroneously referred to as Dr. Barma). (AR 28-29.)

As to the ALJ's evaluation of Dr. Pappas' conclusions, he relied on his own conclusion that Dr. Pappas had been working to control Plaintiff's blood pressure, which medical records showed was not under control, but concluded that "Dr. Pappas' opinion is contradicted by other doctors' records." (AR 29.)

With regard to Dr. Gutierrez, the ALJ simply made a conclusory statement that despite the fact that she is Plaintiff's primary care physician, "little weight is accorded to the restrictions she imposes on standing, walking, and reaching, as they are not well supported by clinical data and/or diagnostic findings; and her statement concerning absences is speculative." (AR 28-29.)

The ALJ noted that Dr. Fuenzalida, the neurologist, had only seen Plaintiff four times, but rejected Dr. Fuenzalida's significant conclusion that Plaintiff could only stand or walk one hour within an eight-hour workday because it was without sufficient foundation, "particularly in light of the fact that magnetic resonance imaging shows the lumbar spine is within normal limits and the thoracic spine has only some slight degenerative disc disease." (AR 29.)

Finally, the ALJ rejected Dr. Barba's opinion with regard to Plaintiff's significant urinary incontinence issues because it did not "seem reasonable in light of [Plaintiff's] treatment records ... his conclusions are not borne out by treatment records from a year earlier which indicate her bladder problems had been resolved." (Id.)

It is of course hornbook law that an ALJ may only reject

uncontradicted opinions of treating physicians for clear and
convincing reasons, and if a treating physician's opinion is
inconsistent with other evidence in the record, there must still be
specific and legitimate reasons cited in the Decision. See Reddick v.
Chater, 157 F.3d 715, 725 (9th Cir. 1998), Lester v. Chater, 81 F.3d
821, 830 (9th Cir. 1995). As the Ninth Circuit has clearly stated, it
is entirely insufficient for an ALJ to reject the opinions of
physicians by generic comments that such opinions are not supported by
objective findings or are contrary to some unstated medical evidence.
See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). In order for
the Court to perform a sufficient level of judicial review, an ALJ's
Decision must set forth the reasons for rejection of particular
evidence based on specific discussion of contradictory evidence and
why one is more persuasive than the other. In this case, that did not
occur as to any of the physicians who treated Plaintiff. In addition
to that deficiency, this ALJ did not rely upon a medical expert, but
instead, substituted his own lay opinion as to causation of
neurological problems as being based on blood pressure issues, despite
the fact that Plaintiff was treated by neurologists who assessed
neurological causes for Plaintiff's impairments, such as gait ataxia.
Moreover, the ALJ seemed unwilling to accept that medications which
might have helped such things as incontinence at one point might have
become ineffective. If this was just an issue of Plaintiff's
subjective complaints, it might be more reasonable to reject them, but
in this case, there is clear and substantial evidence that Plaintiff's
medications were changed, and she was beginning a new course of
treatment for her incontinence problems which had not yet been
successful.

With regard to rejection of Dr. Fuenzalida's conclusions, the ALJ inserted his own interpretation of MRI imaging as to Plaintiff's lumbar spine and his own conclusion that Plaintiff's thoracic spine has only some slight degenerative disc disease. (AR 29.) This is not corroborated by any medical source, and the Court will note that the Commissioner's reliance on the opinion of an examining neurologist, Dr. Mays, from July 2009 (AR 283-286), has no relevance whatsoever, in that the ALJ failed to even mention Dr. Mays' conclusions, much less rely on them.  The Commissioner relies on seminal cases such as <u>Batson</u> <u>v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) to argue that in this case the ALJ rightfully rejected the opinions of treating physicians which are conclusory, brief and unsupported by the record as whole by objective findings. (JS at 16.) That is not at all the case here.  Plaintiff was treated by these physicians, and their opinions were rejected despite being supported by objective testing and examination.  The fact that Plaintiff may have shown some improvement in her symptomology at times after her stroke is not the determinative factor in assessing her continuing condition.

For the foregoing reasons, the matter will be remanded for reconsideration of the opinions of Plaintiff's treating and examining physicians, and additional evidence may be taken to determine the issue of disability.

With regard to the assessment of Plaintiff's credibility concerning subjective symptoms, the ALJ found Plaintiff not credible to the extent that her complaints are inconsistent with the RFC assessment. (AR 27.)  The reasons cited by the ALJ (AR 27-28) mostly repeat the ALJ's evaluation of the objective medical evidence, which

the Court has already discounted in remanding this for a new hearing. An additional factor cited by the ALJ is that Plaintiff has received an essentially conservative level of treatment not requiring any "hospitalization, surgery, exquisite therapies, or any other extraordinary treatments." (AR 28.)   The Court has difficulty understanding what the ALJ would consider to be appropriate treatment for the impairments and symptoms experienced by Plaintiff, especially in the absence of any medical evidence that such additional or other treatments might be effective.   The ALJ apparently gave short shrift to any consideration that neurological problems are difficult to treat, that Plaintiff has had bladder problems which her physicians have attempted to address with different types of treatment, thus far unsuccessful, and that, as noted, Plaintiff continues to be treated for blood pressure issues, but her problems appear to be more neurological than a result of hypertension.   The Court agrees with Plaintiff that the ALJ's discounting of her credibility is largely based upon substitution of his own medical judgment as to what treatment might or would be appropriate, and his own medical assessments, which the Court has already indicated are beyond his expertise.   See Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975).   In this case also, it appears that Plaintiff has diligently attempted to follow the course of treatment recommended by her doctors.   Her primary treating physicians have referred her to specialists, such as neurologists and urologists, where appropriate.   All of these doctors have assessed impairments which they have attempted to treat in various ways.   All in all, the credibility assessment factors set forth by the ALJ in the Decision are wholly insufficient.   On remand, Plaintiff's credibility

will be redetermined in accordance with appropriate consideration of her treatment history and the opinions of her treating physicians.

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**


DATED: August 19, 2013                    /s/
                                          VICTOR B. KENTON
                                          UNITED STATES MAGISTRATE JUDGE